### ROGER HERRING *vs.* BOSTON IRON COMPANY.

H. agreed in writing " to slate the other building, about to be built at South Boston, for the new iron works, by G. and others, on the same terms he did the first building:" The written contract, specifying the work to be done on the first building, and the prices to be paid therefor, was between H. and the B. I. Co., of which G. was treasurer: Before H. thus agreed to slate " the other building," G., who owned the new iron works at South Boston, had sold them to the M. I. Co., in which he was a stockholder, pursuant to an agreement to that effect made with the other stockholders before that corporation was organized. *Held*, in an action brought by H. against the B. I. Co. to recover for slating the second building, that extrinsic evidence was admissible to show who were designated by the words " G. and others" in the written agreement, and for whom and on whose account such slating was to be done.

ASSUMPSIT for work done and materials furnished in the slating of a building at South Boston. Writ dated March 13th 1848. Plea, the general issue.

At the trial before the chief justice, the plaintiff gave in evidence the following contract: " Memorandum of an agreement made and entered into by and between Mr. R. Herring, of Boston, slater, and the Boston Iron Company. Witnesseth: That the said R. Herring hereby agrees to slate the building now being built by the said Boston Iron Company, in South Boston, for iron works, with the following described slate: The main building, containing about one hundred and forty three squares, with imperial slate, twenty inches long, and of good substantial thickness, and nailed with composition nails. The wings, containing about three hundred and five squares, with viscountess slate, eighteen by ten inches, and nailed with composition nails. The said Herring agrees to furnish all the materials, such as slate, lead, zinc, nails, &c. (excepting the irons on the ridge,) and to do the work in a good, substantial and workmanlike manner; the materials to be of the best quality. On condition that the said Herring does well and faithfully perform his part of this agreement, then the said Boston Iron Company do hereby agree to pay to the said Herring the following prices: For every square of one hundred feet, slated with imperial slate, ten dollars and fifty cents. For every square of one hundred feet, slated with viscountess slate, eight dollars. In case the

imperial slate, now ordered by the said Herring, do not arrive in season, it shall be at the option of the said Boston Iron Company to have the main building slated with viscountess slate, at eight dollars per square, or wait for the arrival of the imperial slate from England. Payments to be made as follows : one half to be made on completion of the work, and one half to be made three months after the work is completed. Signed this twenty-ninth day of December, one thousand eight hundred and forty six.         Roger Herring.

In presence of        Ralph Crooker,

D. Mitchell, Jr.      Supt. Boston Iron Works."

The plaintiff then gave in evidence, as the agreement under which the work was done and materials furnished, for the price of which this action was brought, the following: " Memo'. Mr. Herring agrees to slate the other building about to be built at South Boston, for the new iron works, by Horace Gray, Esq. and others, on the same terms as he did the first building.

Boston Iron Works, July 10, 1847.    Roger Herring."

Ralph Crooker, being called as a witness for the plaintiff, testified that in 1846 and 1847 he was superintendent of the works of the Boston Iron Company on the Mill Dam; that the two agreements above set forth were made by him at the company's counting room on the Mill Dam, and drawn up by Mitchell, who was clerk there; that he had authority from Horace Gray, the treasurer and principal stockholder in the company, to make the first contract; and that he made the second without any new authority; that he acted for the Boston Iron Company, or rather by instructions from their treasurer; and that previous to the making of the contract he knew that Gray had commenced the works at South Boston on his own account and not on account of the Boston Iron Company. The plaintiff proposed to ask the witness whether any other parties were mentioned, than those who were parties to the first contract. But the question was objected to, and the judge ruled that it was inadmissible, because it implied that the parties to the first contract were the parties intended, which was to be determined by the memorandum itself.

The defendants gave in evidence, without objection by the plaintiff, an agreement in writing, between Horace Gray, Benjamin T. Reed and others, dated March 26th 1847, wherein it was proposed to organize the Massachusetts Iron Company with a capital of $300,000, of which $200,000 should be invested in real estate and machinery, and $100,000 as floating capital; and Gray agreed to sell to the company, and the company agreed to purchase, his works at South Boston, for the sum of $200,000; and Gray agreed to take $150,000 in the capital stock of the company, and the other associates agreed to take certain sums respectively, amounting. in all to the remaining $150,000. The defendants also proved the organization of said company as a corporation on the 6th of May 1847; and a conveyance of said works from Gray to them on the 15th of the same month.

The judge ruled that extrinsic evidence was admissible to prove certain facts constituting any làtent ambiguity, but not to prove any other intent than that expressed in the memorandum; but that extrinsic evidence, and the former contract, were admissible to prove the terms, because this memorandum expressly referred to and called for it; that the fact that Horace Gray and others were erecting new iron works at South Boston might be proved by extrinsic evidence, for the same reason: That it was not competent to prove by such evidence, that Crooker had authority, in making this second contract, to act for the Boston Iron Company, because he did not profess so to act, and because he knew the new works were building for another concern, and not for the Boston Iron Company, and because the persons by whom the building was being put up, were described in the contract as " Horace Gray, Esq. and others:" That the former contract, purporting to be made on account of the Boston Iron Company, was not competent evidence to prove that the second contract was made on the same account; because, in that respect, the second memorandum stated, that the building, then agreed to be slated, was being erected by " Horace Gray, Esq. and others," which implied, in the absence of some evidence to control it, that it was being erected for their own

account, and did not call for, nor admit of, extrinsic evidence to control its effect; nor was it competent, therefore, to go into such evidence to show that Crooker was authorized, and in tended, to make the first contract in the name and on account of the Boston Iron Company, for that would raise no presumption that therefore he intended, by the second, to act in the same capacity, because in the written memorandum, he did not profess to act for them, as he did in the first.

The chief justice further ruled that, the memorandum of July 1st 1847, providing for the doing of the work now in question, being a contract in writing, binding upon the plaintiff, signed by him, and offered in evidence by him, it was therefore not competent for the plaintiff to show by parol evidence that it was not made according to the intent of the parties, without proving actual misrepresentation and fraud, by which the plaintiff was deceived; that, as already ruled, this contract referred to the prior one, for the terms on which the work should be done, but not for the parties; that the parties were sufficiently designated by the terms, " Horace Gray, Esq. and others," which excluded the Boston Iron Company as the contracting party; that it was therefore not competent to show by parol evidence that the Boston Iron Company was intended, and not Horace Gray and his associates; and it being in evidence that, when this contract was made, Horace Gray had formed an agreement with Reed and others, to carry on the works at South Boston, that a corporation had been organized for that purpose, and the land on which the works at South Boston stood had then been conveyed to them; and there being no proof of any similar association between Gray and other persons to build iron works at South Boston; that it was for the jury to consider whether this association was not referred to by the terms, " Horace Gray, Esq. and others," in a contract for work on the new buildings; and if they were, then, as matter of law, the contract was for them, and on their account, and not for, or on account of, the Boston Iron Company.

After the foregoing rulings, and others not material to be stated, had been made, the plaintiff became nonsuit, subject to

the opinion of the whole court upon the points of law ruled at the trial. And it was agreed that the court might enter judgment on nonsuit or default, or pass such other order as the justice of the case and the rights of the parties might, in their judgment, require.

C. G. *Loring*, for the plaintiff.

*W. H. Gardiner & S. Bartlett*, for the defendants.

THOMAS, J Many questions have been elaborately discussed in the argument of this cause, which we have found it unnecessary to consider, being of opinion that a new trial should be had upon the question for whom and on whose credit the work was done and the materials furnished.

The memorandum indicates who is to do the work, and, by reference to a former agreement, the terms on which it is to be done; but it is left doubtful for whom and on whose credit and account the labor is to be performed and materials supplied. It is plain that extrinsic evidence must be admitted to ascertain who are designated by the words "Horace Gray, Esq. and others," and what is meant by the words, "other" and "first," which are relative words. It is uncertain whether the words, "Horace Gray, Esq. and others" constitute part of the designation or description of the new iron works, or the persons by whom the building was to be constructed, or the persons for whom or on whose account the building was to be erected.

To ascertain who are the parties, resort must doubtless be had, in the first instance, to the written instrument. If this fail to designate them or either of them, resort must be had to extrinsic evidence to supply the want. If the contract is ambiguous, and the ambiguity is latent, that is, if it results from viewing the instrument in the light of the collateral facts, or what may be called the necessary extrinsic evidence, that ambiguity is to be removed by other evidence from the same source, according to the familiar maxim of Lord Bacon, *nam quod ex facto oritur ambiguum, verificatione facti tollitur.*

*New trial granted.*